## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GORDAN GROHMANN, JR.,
individually and as Special administrator
of Estate of GORDON GROHMAN, SR.

      **Plaintiff,**

v.                                                                    Case No. 20-2304-DDC-JPO

HCP PRAIRIE VILLAGE KS
OPCO LLC, et al.,

      **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on plaintiff's Motion to Remand to State Court (Doc. 15). Plaintiff argues that his Kansas state law claims belong in state court. Defendants argue that a federal law—the Public Readiness and Emergency Preparedness Act (PREP Act)—*completely preempts* plaintiff's claims, thus providing this court with subject matter jurisdiction over them.

While plaintiff's remand motion was pending, several federal district courts, including our own, ruled on similar jurisdictional issues. The court ultimately finds those cases persuasive and concludes that the Secretary of Health and Human Services's December 3, 2020 Amendment to the Declaration reinforces the holdings in those cases. For reasons explained below, the court remands the matter for lack of subject matter jurisdiction.

I.      **Background**

Gordon Grohman, Sr.[1] lived in the northeast Kansas town of Prairie Village. Doc. 1-1 at 2 (Pet. ¶ 1). Around August 2018, he began to reside at Brighton Gardens of Prairie Village, an

---

[1]      Plaintiff Gordan Grohmann, Jr. asserts that he is the son of Gordon Grohman, Sr. Doc. 1-1 at 2 (Pet. ¶ 3). To avoid any confusion, the court flags the incongruent spellings of their first and last names.

independent living facility.  *Id.* at 2–3 (Pet. ¶¶ 1, 7).  He was a paying resident there for the purpose of receiving protective care and oversight and all other necessary care for his existence because he was unable to care for himself.  *Id.* at 7 (Pet. ¶ 23).

In early to mid-April 2020, Brighton Gardens confirmed its first positive cases of COVID-19 at its facility.  *Id.* (Pet. ¶ 28).  By April 24, 2020, 13 residents and seven staff members had tested positive for COVID-19.  *Id.* (Pet. ¶ 29).  While a resident at Brighton Gardens, Mr. Grohman was exposed to COVID-19.  *Id.* at 2 (Pet. ¶ 2).  By April 29, 2020, he was extremely confused and exhibited multiple symptoms of COVID-19.  *Id.* at 8 (Pet. ¶ 35).  His family insisted that Brighton Gardens arrange to transport him to the hospital on April 29, 2020.  *Id.* (Pet. ¶ 36).  On April 30, 2020, Mr. Grohman was diagnosed COVID-19 positive.  *Id.* (Pet. ¶ 37).  The next day, he died from the virus.  *Id.* at 2, 8 (Pet. ¶¶ 1–2, 38).

On May 18, 2020, plaintiff filed this action in Johnson County, Kansas District Court individually and as Special Administrator of the Estate of Gordon Grohman, Sr.  *Id.* at 2 (Pet.).  Plaintiff has sued defendants for wrongful death, lost chance of survival, and negligence.  He avers, among other things, that:

- Defendants "failed to timely intervene to obtain medical attention for" decedent.  Doc. 1-1 at 8 (Pet. ¶ 36).

- "Defendants failed to ensure its workers were not working with symptoms consistent with COVID-19."  *Id.* (Pet. ¶ 40).

- "Defendants failed to train, instruct, and/or monitor staff use of proper personal protective equipment to prevent spread of COVID-19."  *Id.* at 8–9 (Pet. ¶ 41).

- "Defendants failed to effectively separate those with symptoms of COVID-19 from the remaining population of the facility."  *Id.* at 9 (Pet. ¶ 42).

- "Defendants failed to adhere to social distancing guidelines put in place in March 2020 to keep its residents safe from being exposed to COVID-19."  *Id.* (Pet. ¶ 43).

- "Defendants otherwise failed to sufficiently control or manage the presence of COVID-19 in the facility." *Id.* (Pet. ¶ 44).

- "Defendants failed to timely implement a plan of improvement to address the COVID-19 outbreak at the facility." *Id.* (Pet. ¶ 45).

- "Defendants negligently failed to follow proper infection control protocols and prevent an outbreak of COVID-19. *Id.* at 8 (Pet. ¶ 39).

He also alleges that defendants were negligent in:

- "failing to follow proper guidelines in place for the prevention of COVID-19 outbreaks in long term care facilities[.]" *Id.* (Pet. ¶ 47(a)).

- "failing to ensure its staff was not allowed to work at Brighton Gardens when they exhibited signs and symptoms consisted with COVID-19[.]" *Id.* (Pet. ¶ 47(b)).

- "failing to instruct, train, and/or monitor staff regarding the appropriate use of personal protective equipment and infection control protocols[.]" *Id.* (Pet. ¶ 47(c)).

- "failing to properly respond to the presence of COVID-19 in the defendant facility to prevent spread[.]" *Id.* (Pet. ¶ 47(d)).

- "failing to timely request additional staff, resources, and other assistance from the public health entities available to respond to COVID-19[.]" *Id.* (Pet. ¶ 47(e)).

- "failing to separate residents with signs and symptoms of COVID-19 from the remaining resident population[.]" *Id.* (Pet. ¶ 47(f)).

- "failing to prevent staff members from coming into contact with both COVID-19 positive and negative residents such that staff members spread the virus from person to person[.]" *Id.* (Pet. ¶ 47(g)).

- "failing to adhere to social distancing guidelines put in place in March 2020 to keep its residents safe from being exposed to COVID-19[.]" *Id.* (Pet. ¶ 47(h)).

- "failing to timely, consistently, and properly assess, re-assess and document Gordon Grohman's physical condition[.]" *Id.* (Pet. ¶ 47(i)).

- "failing to properly supervise and train Defendants' agents and/or servants who were responsible for the care, treatment, and oversight of Gordon Grohman, Sr." *Id.* (Pet. ¶ 47(j)).

- "failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of COVID-19[.]"  *Id.* (Pet. ¶ 47(k)).

- "failing to provide adequate training to staff regarding prevention of COVID-19[.]"  *Id.* (Pet. ¶ 47(l)).

- "failing to implement appropriate interventions and thereby allowing Gordon Grohman, Sr. to be exposed to COVID-19 in the defendant facility[.]"  *Id.* (Pet. ¶ 47(m)).

- "failing to document changes in Gordon Grohman, Sr.'s condition[.]"  *Id.* (Pet. ¶ 47(n)).

- "failing to adequately, accurately and timely monitor Gordon Grohman, Sr.'s changes in condition[.]"  *Id.*

The court next explains how this state law action made its way to federal court, and then determines whether it properly may remain here.

## II.  Procedural History

On June 19, 2020, defendants filed a Notice of Removal with this court (Doc. 1).  They followed up by filing a Motion to Dismiss for Failure to State a Claim (Doc. 8).  Plaintiff then filed a Motion to Remand to State Court (Doc. 15).  Defendants filed a Response and Request for Jurisdictional Hearing (Doc. 36).  And plaintiff filed a Reply (Doc. 39).[2]

Defendants also filed a Counterclaim for declaratory relief (Doc. 35).  Plaintiff filed a Motion to Dismiss the Counterclaim (Doc. 42) and a Memorandum in Support (Doc. 43). Defendant filed a Response and Request for Hearing (Doc. 52).  And plaintiff filed a Reply (Doc. 53).

---

[2]        The parties have also filed notices of supplemental authorities since filing their briefs.  *See* Doc. 54, Doc. 55; Doc. 57; Doc. 58; Doc. 59; Doc. 60.  The court has reviewed all of these pleadings and supplemental authorities in deciding the motions.  *See* D. Kan. Rule 7.1(f).

## A.     Defendants' Motion for Leave to File Surreply

On August 26, defendants filed a Motion for Leave to File Surreply (Doc. 41) to plaintiff's Reply supporting his Motion to Remand.  Plaintiff responded (Doc. 45).

The court's local rules limit briefing on motions to the motion, a memorandum in support, a response, and a reply.  D. Kan. Rule 7.1(a) & (c).  "Surreplies are typically not allowed." *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd on other grounds*, 189 F. App'x 752 (10th Cir. 2006).  Instead, sur-replies are permitted only with leave of court under "rare circumstances." *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations omitted); *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550, at *5 (D. Kan. Mar. 10, 2020).  For example, when a moving party raises new material for the first time in a reply, the district court has discretion to grant leave to file a sur-reply to afford the opposing party an opportunity to respond to the new material.  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).  The rules limiting sur-replies "are not only fair and reasonable, but they assist the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word." *Humphries*, 1998 WL 982903, at *1.

Here, defendants assert that "decisions on motions for remand have been issued by federal courts . . . after Defendants filed their Response" and only plaintiff "had an opportunity to address" them.  Doc. 41 at 2.  Plaintiff "recognizes that new legal authorities were cited in his Reply."  Doc. 45 at 1 (¶ 3).  But he asks the court to limit the sur-reply "to responding to those new authorities." *Id.*  Specifically, plaintiff asks the court to prohibit defendant from addressing "a 'new opinion letter' purportedly authored by the Office of General Counsel, Secretary of the

Department of Health and Human Services on August 14, 2020[.]"  Doc. 45 at 1 (¶ 4).

Defendants respond that the letter is "highly relevant" because plaintiff names senior living

communities in this suit and makes express allegations which squarely invoke the statute the

letter interprets.  Doc. 51 at 2.  But defendants cite no authority holding that the decision whether

to grant a motion for leave to file a sur-reply containing new authorities turns on relevance.

Nevertheless, this case presents circumstances that warrant leave for a sur-reply.

Exercising its discretion, the court grants defendants' Motion for Leave to File Surreply (Doc.

41) consistent with this Order.  The court will consider the arguments presented by defendants'

Surreply (Doc. 41-1) in its analysis, below.  The court also directs the Clerk to docket Doc. 41-1

as defendants' Sur-reply.  Given the extended opportunity to sharpen the issues for the court, and

the quality of the briefs submitted, the court concludes that oral argument will not assist its work

and thus, to grant it, would contradict Fed. R. Civ. P. 1.  Exercising its discretion, the court thus

denies defendants' Request for a Jurisdictional Hearing (Doc. 36).

## III.     Legal Standard

"'Federal courts are courts of limited jurisdiction.  They possess only that power

authorized by Constitution and statute[.]'"  *United States v. James*, 728 F. App'x 818, 822 (10th

Cir. 2018) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Congress has empowered federal courts to hear certain cases removed from state court.

Defendants may remove any state-court, civil action to federal court if the federal court has

original jurisdiction over at least one of the plaintiff's claims.  28 U.S.C. § 1441(a); 28 U.S.C. §

1367.  But, the court must remand the case to state court if the federal court lacks subject matter

jurisdiction over the action.  28 U.S.C. § 1447(c).  And the "removing party has the burden to

demonstrate the appropriateness of removal from state to federal court." *Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005) (citation omitted).

## IV.    Discussion

This case, in a nutshell, requires the court to decide whether plaintiff's claims arise under federal law for purposes of statutory federal question jurisdiction. This question requires the court to consider the doctrine of "complete preemption" and thus determine whether plaintiff's state court allegations fall within the scope of a federal remedial right.

In this case, the relevant remedial right comes from the PREP Act, 42 U.S.C. §§ 247d—d-10. And the scope of that remedial right depends on a few words in the statute, *i.e.*,: "injuries directly caused by the administration or use of a covered countermeasure[.]" 42 U.S.C. § 247d-6e(a). Plaintiff's Motion to Remand thus turns on whether this federal remedy envelops plaintiff's removed state law claims. But before diving into that deep well of arguments, the court reviews several general rules governing removal of state law claims to federal court.

### A.    Removal of Federal Question Cases to Federal Court

Congress has granted federal district courts authority to hear certain civil actions brought originally in state court. *See* 28 U.S.C. § 1441. "Under the removal statute, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant' to federal court." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1441(a)).

"One category of cases of which district courts have original jurisdiction is '[f]ederal question' cases: cases 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331). "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Id.* (citation and internal quotation

marks omitted).  Under this rule, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (citations and internal quotation marks omitted).

A federal defense typically cannot supply the federal question required by the well-pleaded complaint rule, and thus cannot create statutory federal question jurisdiction.  *Id.*; *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).  So as "a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

"There is an exception, however, to the well-pleaded complaint rule.  '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed."  *Davila*, 542 U.S. at 207 (quoting *Anderson*, 539 U.S. at 8); *see also Christensen v. BNSF Ry. Co.*, 242 F. Supp. 3d 1186, 1190 (D. Kan. 2017).

The court now explores the "complete preemption" doctrine and considers whether this exception to the well-pleaded complaint rule applies here.

**B.      The Doctrine of "Complete Preemption"**

"In *Anderson*, the Supreme Court held that a state claim may be removed to federal court in only two circumstances:  (1) 'when Congress expressly so provides'; or (2) 'when a federal statute wholly displaces the state-law cause of action through complete pre-emption.'"  *Devon Energy*, 693 F.3d at 1205 n.7 (quoting *Anderson*, 539 U.S. at 8).

Courts make a habit of pointing out that the preemption required to invoke the "complete preemption" doctrine is not the "ordinary preemption" that defendants usually rely on as a defense.  *See Devon Energy*, 693 F.3d at 1203 n.4 (citations omitted); *see also Christensen*, 242

F. Supp. 3d at 1190.  "'[C]omplete preemption' refers to the replacement of a state cause of action with a federal one."  *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).  It is "quite rare."  *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citation and internal quotation marks omitted); *see also Devon Energy*, 693 F.3d at 1204–05 (noting that "the Supreme Court has warned that complete preemption should not be lightly implied" (citation and internal quotation marks omitted)).

"'When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'"  *Dutcher*, 733 F.3d at 985 (quoting *Anderson*, 539 U.S. at 8); *see also Davila*, 542 U.S. at 207–08.  Similarly, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23–24 (1983).

To determine whether a federal act completely preempts plaintiff's claims, the court must answer two questions affirmatively:  (1) does "the federal regulation at issue preempt[ ] the state law relied on by the plaintiff"; and (2) did Congress intend to allow removal in this case.  *Devon Energy*, 693 F.3d at 1205–06 (citing *Schmeling*, 97 F.3d at 1342).  Our Circuit has instructed district courts to start with the second question—congressional intent.  *Id.* at 1206.  And in "providing further guidance concerning the requirements for complete preemption, the [Supreme] Court observed that 'the proper inquiry focuses on whether Congress intended the federal cause of action *to be exclusive* rather than on whether Congress intended that the cause of action be removable.'"  *Id.* at 1206 n.7 (quoting *Anderson*, 539 U.S. at 9 n.5 (emphasis added)) (noting that *Anderson*'s "formulation of the complete-preemption test ultimately may require

[the Tenth Circuit] to reformulate the test [it] set out in *Schmeling*" but declining to do so in *Devon Energy* (citations omitted)).

Under either formulation of the complete preemption analysis, "the claims at issue must fall within the scope of the relevant federal statute for complete preemption to apply." *Eaton v. Big Blue Healthcare, Inc.*, ___ F. Supp. 3d ___, No. 2:20-CV-2291-HLT-JPO, 2020 WL 4815085, at *4 (D. Kan. Aug. 19, 2020) (citation omitted); *see also Anderson*, 539 U.S. at 7; *Franchise Tax Bd.*, 463 U.S. at 23–25.

Here, defendants assert that federal question jurisdiction exists via complete preemption, so "it is their burden to show that, first, the PREP Act applies" to plaintiff's claims. *Eaton*, 2020 WL 4815085, at *6.

The court next introduces the PREP Act and then turns to this preliminary question.

**C.      Whether Plaintiff's Claims Fall Within a PREP Act Remedy**

**1.  The PREP Act**

"In a nutshell, the PREP Act empowers the Secretary of the Department of Health and Human Services to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency." *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20CV1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (quoting 42 U.S.C. § 247d(a)).  Once the Secretary has issued such a declaration, the statute "provides sweeping immunity for certain claims against certain covered individuals[.]" *Eaton*, 2020 WL 4815085, at *4.  The PREP Act's immunity provision establishes that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ."  42 U.S.C. § 247d-6d(a)(1).

In March 2020, Secretary Alex Azar issued a PREP Act declaration for COVID-19.[3]  On

December 3, 2020, he issued the Fourth Amendment to the Declaration.  85 Fed. Reg. at 79,190.

### 2.   The PREP Act Creates Federal Remedial Rights

"In order to determine whether complete preemption is applicable here, [the court] must

first address whether federal law provides a private right of action to sue for violations . . . ."

*Dutcher*, 733 F.3d at 986.  The PREP Act creates two federal remedies.  *First*, the "PREP Act

permits 'an exclusive Federal cause of action against a covered person for death or serious

physical injury proximately caused by willful misconduct . . . .'"  *Eaton*, 2020 WL 4815085, at

*5 (quoting 42 U.S.C. § 247d-6d(d)(1)).  *Second*, for "injuries not involving willful misconduct,

the PREP Act establishes a 'Covered Countermeasure Process Fund,' which provides

'compensation to eligible individuals for covered injuries directly caused by the administration

or use of a covered countermeasure pursuant to such declaration.'"  *Id.* (quoting 42 U.S.C. §

247d-6e(a)).[4]

Next, the court considers the scope of these federal remedial rights.

### 3.   The Scope of the PREP Act's Remedial Rights

#### a.   Generally

Our court has examined recently the PREP Act and the scope of its causes of action.  *See,*

*e.g.*, *Eaton*, 2020 WL 4815085, at *4–5.  *Eaton* explained:

---

[3]      *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical
Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 10, 2020) ("Declaration").

[4]      The statute's use of "proximately caused" for one remedy and "directly caused" for another is
notable.  *See* Antonin Scalia & Bryan A. Garner, Reading Law:  The Interpretation of Legal Texts, § 25
(2012) ("[W]here the document has used one term in one place, and a materially different term in another,
the presumption is that the different term denotes a different idea."); *see also* Caleb Nelson, *Statutory*
*Interpretation*, 88 (2014).  But the court need not determine whether the statutory text uses synonymously
the terms "directly caused" and "proximately caused" to resolve the Motion to Remand.

> In sum, the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices.  Exceptions to immunity exist for claims of willful misconduct but suit must be brought in the United States District Court for the District of Columbia.  All other claims for injuries "directly caused by the **administration or use of a covered countermeasure**" must be pursued through the Covered Countermeasure Process Fund.  State laws that differ or conflict regarding the administration or use of covered countermeasures are preempted.

*Id.* at *5 (emphasis added); *see also Sherod*, 2020 WL 6140474, at *6 ("adopt[ing] the succinct summary of the PREP Act as set forth by the United States District Court for the District of Kansas").  Here, the Petition alleges nothing about willful misconduct, so plaintiff's claims cannot fall within the scope of the act's first remedy.  The court thus focuses on the second federal remedy—claims under the Covered Countermeasure Process Fund.

### b.   Covered Countermeasure Process Fund Claims Under § 247d-6e(a)

"Upon the issuance by the Secretary of a declaration under section 247d-6d(b) . . . there is hereby established in the Treasury an emergency fund . . . for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration[.]"  42 U.S.C. § 247d-6e(a).  If plaintiff's allegations do not assert "injuries directly caused by the administration or use of a covered countermeasure[,]" then the claim falls outside the scope of the federal remedy.  *Id.*  And if the claim falls beyond the scope of the federal remedy, that federal cause of action cannot serve as the basis for complete preemption of plaintiff's state law claim(s).  *See Franchise Tax Bd.*, 463 U.S. at 23–25.

"A 'covered countermeasure' under the PREP Act is, simplified, a drug, biological product, or device that is a 'qualified pandemic or epidemic product' or a 'security countermeasure,' or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act."  *Eaton*, 2020 WL 4815085, at *5 (citing 42 U.S.C. § 247d-6d(i)(1)).  "It also

includes a 'respiratory protective device that is approved by the National Institute for

Occupational Safety and Health.'" *Id.* (quoting 42 U.S.C. § 247d-6d(i)(1)).  Secretary Azar's

Declaration under the PREP Act further defines "covered countermeasures" as:

> (a) Any antiviral, any drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine manufactured, used, designed, developed, modified, licensed, or procured:
>
>> i. To diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or
>>
>> ii. to limit the harm that COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, might otherwise cause;
>
> (b) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in paragraph (a) above;
>
> (c) a product or technology intended to enhance the use or effect of a product described in paragraph (a) or (b) above; or
>
> (d) any device used in the administration of any such product, and all components and constituent materials of any such product.

85 Fed. Reg. at 79,196–97.

The PREP Act does not define "administration or use."  But the Declaration explains that

"Administration of the Covered Countermeasure means [1] physical provision of the

countermeasures to recipients, or [2] activities and decisions directly relating to public and

private delivery, distribution and dispensing of the countermeasures to recipients, management

and operation of countermeasure programs, or management and operation of locations for the

purpose of distributing and dispensing countermeasures."  85 Fed. Reg. at 79,197.

To determine the scope of the statute's compensation fund remedy, the court now reviews

cases from our court and others that have construed this PREP Act provision.

13

### 4. Relevant Cases from Our Court and Others

Plaintiff's Motion to Remand raises questions similar to those that several courts, including our own, have confronted recently.  In eleven related cases,[5] our court held that the PREP Act was "inapplicable" to plaintiffs' negligence claims where plaintiff's "case is premised on inaction" and there was "no clear allegation that any injury or claim of loss was caused by the administration or use of any covered countermeasure, let alone that the loss arose out of, related to, or resulted from the same." *Eaton*, 2020 WL 4815085, at *1 n.1, *6–7.  *Eaton* reasoned that "the PREP Act addresses the administration or use of covered countermeasures.  There is simply no room to read it as equally applicable to the non-administration or non-use of covered countermeasures." *Id.* at *8.

Several other federal district courts have reached similar conclusions.  *See Sherod*, 2020 WL 6140474, at *6–7 (holding that because Complaint alleges that defendant "failed to provide decedent with any protection/countermeasures, Plaintiff's claims fall outside the purview of the PREP Act which purports to provide immunity to facilities like [defendant] when a claim is brought against them for the countermeasures the facility actually utilized"); *Gunter v. CCRC OPCO-Freedom Square, LLC*, No. 8:20-cv-1546-T-36TGW, 2020 U.S. Dist. LEXIS 201622, at *14–15 (M.D. Fla. Oct. 29, 2020) (granting plaintiff's Motion to Remand where plaintiff's

---

[5]        *Fortune v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2318-HLT-JPO, 2020 WL 4815097 (D. Kan. Aug. 19, 2020); *Rodina v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2319-HLT-JPO, 2020 WL 4815102 (D. Kan. Aug. 19, 2020); *Lutz v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2316-HLT-JPO, 2020 WL 4815100 (D. Kan. Aug. 19, 2020); *Campbell v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2265-HLT-JPO, 2020 WL 4815082 (D. Kan. Aug. 19, 2020); *Eaton v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2291-HLT-JPO, 2020 WL 4815085 (D. Kan. Aug. 19, 2020); *Long v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2263-HLT-JPO, 2020 WL 4815079 (D. Kan. Aug. 19, 2020); *Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2259-HLT-JPO, 2020 WL 4815099 (D. Kan. Aug. 19, 2020); *Brown v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2261-HLT-JPO, 2020 WL 4815078 (D. Kan. Aug. 19, 2020); *Block v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2262-HLT-JPO, 2020 WL 4815076 (D. Kan. Aug. 19, 2020); *Baskin v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2267-HLT-JPO, 2020 WL 4815074 (D. Kan. Aug. 19, 2020); *Harris v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2266-HLT-JPO, 2020 WL 4815098 (D. Kan. Aug. 19, 2020).

"claims do not fall within the scope of the PREP Act, and therefore do not provide a basis for this Court's jurisdiction" because, *inter alia*, plaintiff "does not allege that any manufacture, testing, development, distribution, administration, or use of countermeasure caused or contributed to the injuries and death of" decedent); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, ___ F. Supp. 3d ___, No. CV 20-6605 (KM)(ESK), 2020 WL 4671091, at *9 (D.N.J. Aug. 12, 2020) (concluding that malpractice claim about countermeasures *not* used "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them"); *Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949, at *1–2 (C.D. Cal. Sept. 10, 2020) (rejecting defendants' argument that the PREP Act completely preempted plaintiffs' state law claims alleging that defendants "failed to staff the nursing facility they owned and operated adequately, failed to take proper precautions to prevent the spread of COVID-19 in the facility, and failed to react properly to the infections that became present in the facility" and that these "failings . . . caused the death of the decedent"); *see also Jackie Saldana v. Glenhaven Healthcare LLC*, No. CV205631FMOMAAX, 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020) (rejecting argument that the PREP Act completely preempted plaintiffs' state law claims alleging that defendants "improperly and inadequately protected [nursing home resident] from the COVID-19 virus during the coronavirus pandemic").

And several state court decisions fall in the same line.  *See, e.g.*, *Casabianca v. Mount Sinai Med. Ctr*, No. 112790/10, 2014 WL 10413521, at *4 (N.Y. Sup. Ct. Dec. 2, 2014) (holding the PREP Act did not pre-empt plaintiff's malpractice claim for failure to administer a vaccine because under the PREP Act "the injury must be one . . . occur[ing] from the administration or use of the vaccine, no matter what circumstances led to that use.  Nothing is spoken of regarding

a decision not to use the vaccine or of a failure to use it, whenever that decision was made or that failure may have occurred"); *cf. Parker v. St. Lawrence Cnty. Pub. Health Dep't*, 102 A.D.3d 140, 141 (N.Y. App. Div. 2012) (concluding that the PREP Act provided defendant a preemption defense to plaintiff's claim where it was undisputed that the vaccine was administered and there was no question that the claim of loss—administration of a vaccine without consent—was "caused by, [arose] out of, relat[ed] to, or result[ed] from the administration to . . . an individual of a covered countermeasure").

"Read together, *Maglioli*, *Casabianca*, and *Parker* support the conclusion that the PREP Act applies to action, not inaction." *Eaton*, 2020 WL 4815085, at *6. The growing number of more recent cases court bolsters that synthesis.

### 5. Whether "Inaction Claims" Can Fall Within the PREP Act's Scope

On December 3, 2020, the HHS Secretary amended, among other provisions, Section IX of the Declaration to note that "[w]here there are limited Covered Countermeasures, *not* administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. 247d–6d." 85 Fed. Reg. at 79,197. The Amended Declaration explains that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." *Id.* The Amended Declaration illustrates that, in certain circumstances, "the failure to administer" the Covered Countermeasure to one person "'relat[es] to . . . the administration to'" another. *Id.* (quoting 42 U.S.C. § 247d-6d).[6]

---

[6]     Defendants' Second Supplemental Authority (Doc. 58) directs the court to HHS Advisory Opinion 21-01 (Doc. 58-1) which the agency's General Counsel published on January 8, 2021. Advisory Opinion 21-01 reiterates much of the Secretary's guidance about non-use or failure to administer claims. *See* Doc. 58-1 at 3–4.

So, based on the recent amendment, an "inaction claim" is not necessarily beyond the scope of the PREP Act. The statute's immunity provision could cover a claim of inaction or failure to administer countermeasures. But, this possibility does not upend the distinction between action and inaction that our court and others have drawn. The Declaration suggests that alleged inaction or failure to administer countermeasures falls within the grant of federal immunity when paired closely with an act of administration to another.

The Secretary notes that "*not* administering a Covered Countermeasure" can constitute "'relating to . . . the administration to . . . an individual'" under 42 U.S.C. § 247d-6d where (1) "there are limited Covered Countermeasures," and (2) the failure to administer to one individual is "in order to administer it to another individual[.]" *Id.* (quoting 42 U.S.C. § 247d-6d (emphasis added)); Doc. 58-1 at 3–4 (HHS Advisory Op. 21-01). The Secretary's illustration reinforces the need for these two conditions for "inaction claims" to fall within the statute's reach. *See* 85 Fed. Reg. at 79,197 (illustrating a causal relationship between (1) administering and (2) *not* administering a covered countermeasure where person-A "was able to receive the [single covered countermeasure] *only because* it was not administered to" person B (emphasis added)).

This illustration reflects the difference between (1) robbing Peter *and* paying Paul, and (2) robbing Peter *to* pay Paul—or more precisely: not paying Peter in order to pay Paul. HHS Advisory Opinion 21-01 emphasizes this distinction: "The language of the PREP Act itself supports a distinction between allocation which results in non-use by some individuals, on the one hand, and nonfeasance, on the other hand, that also results in non-use." Doc. 58-1 at 4.

So, the court is mindful of Secretary Azar's understanding that PREP Act immunity can cover certain inaction claims. But this case's motion requires the court to determine the scope of PREP Act's remedy—not its grant of immunity. The court nonetheless concludes that the

Declaration's emphasis on causation in the context of non-administration claims reinforces our court's causation analysis in related PREP Act cases.

Specifically, our court has rejected the notion "that a facility using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility" because the statute "still requires a *causal connection* between the injury and the use or administration of covered countermeasures[.]"  *See Eaton*, 2020 WL 4815085, at \*7 (second emphasis added).  Consistent with *Eaton* and its sibling cases, the Declaration's two conditions for PREP Act immunity in "inaction claims" for *not* administering a covered countermeasure require a close causal relationship between the injurious inaction and the corresponding administration or use that caused it.

### 6.   Whether Plaintiff's Claims Fall Within the PREP Act's Cause of Action

Plaintiff's Petition alleges that defendants failed to act in many different ways.  *See* Doc. 1-1 at 9–11 (Pet.).  And plaintiff alleges that those failures to act directly and proximately caused the alleged harms.  *See id.* at 11–13 (Pet. ¶¶ 52–53, 56–57, 60).  As in *Eaton*, plaintiff here alleges that defendants failed to take various preventive measures to stop the entry, spread, and consequences of COVID-19 within the facility and that defendants' failure to take those precautions led decedent to contract, develop, and die of COVID-19.  *See id.* at 8–11 (Pet.); *see also Eaton*, 2020 WL 4815085, at \*6.

Defendants try their best to contort plaintiff's allegations of inaction into action.  Their mental gymnastics stretch these allegations well beyond all measure of reasonable flexibility.  To be sure, the Petition references "personal protective equipment" (PPE).  *See* Doc. 1-1 at 8–9 (¶¶ 41, 47(c)).  But one can hear ligaments begin to pop when defendants assert that "a plain reading of the Petition reveals that Plaintiff does, in fact, allege Defendants' *active* administration of

certain countermeasures." Doc. 36 at 13 (emphasis added); *see also* Doc. 36 at 22 (asserting that it is "clear" that plaintiff's Petition "expressly implicates the use of *at least three* covered countermeasures").

Defendants also assert that plaintiff "alleged and acknowledged [1] testing, [2] use of PPE, and [3] other administration of countermeasures to residents and staff at Brighton Gardens." Doc. 36 at 26. Defendants aver that plaintiff "expressly alleges that Defendants conducted diagnostic testing of numerous staff members and residents for COVID-19, including the decedent." Doc. 36 at 13 (citing Doc. 1-1 at 7–8 (Pet. ¶¶ 29, 37)); *see also* Doc. 36 at 17 (citing Doc. 1-1 at 7–8 (Pet. ¶¶ 29, 37)); Doc. 36 at 23 (citing Doc. 1-1 at 7–8 (Pet. ¶¶ 28, 29, 37)). But these citations to the Petition can't support defendants' characterizations of plaintiff's claims. Plaintiff does not "expressly allege[ ]" that defendants "conducted" diagnostic testing. Doc. 36 at 13. He alleges only that people tested positive, but never alleges who conducted the testing. *See* Doc. 1-1 at 7–8 (Pet. ¶¶ 28, 29, 37).

Defendants decipher the Petition to conjure the various elements of a PREP Act claim. But that approach doesn't employ the proper method for determining whether a case belongs in federal court. *See Eaton*, 2020 WL 4815085, at *7 n.12 (emphasizing that "the [C]omplaint is what governs at this stage"). Plaintiff's Motion to Remand does not give license to defendants to rewrite plaintiff's state-court claims and "justify removal on the basis of facts not alleged in the complaint." *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 396–97 (1987); *see also Eaton*, 2020 WL 4815085, at *7.

But even if the court were prepared to assume that the Petition alleges conduct that qualifies as "administration or use of a covered countermeasure" within the meaning of the PREP Act, the statute "still requires a causal connection between the injury and the use or

administration of covered countermeasures[.]"  *See Eaton*, 2020 WL 4815085, at *7–8 & n.13.

Nothing in the Petition "suggest[s] that the decedent's death was *causally connected* to the

administration or use of any drug, biological product, or device (i.e. a covered countermeasure[

])."  *Id.* at *6 (emphasis added).  The claims here are "precisely the opposite:  that inaction rather

than action caused the death."  *Id.*; *see also Sherod*, 2020 WL 6140474, at *7 (holding that

plaintiff's "allegations do not fall within the purview of the PREP Act" where plaintiff's

"negligence, misrepresentation, wrongful death and survivor claims are not causally connected to

[the facility's] use of covered countermeasures" because plaintiff "alleges that [the facility's]

*failure to utilize* countermeasures caused the death of the decedent" (second emphasis added)).

As explained above, in theory, certain inaction claims could trigger the PREP Act.  But

here, plaintiff alleges neither (1) limited covered countermeasures nor (2) a failure to administer

those countermeasures to decedent "in order to administer it to another individual[.]"  85 Fed.

Reg. at 79,197.  And while defendants have characterized their actions in such terms,[7] the

Petition alleges nothing about "[p]rioritization or purposeful allocation of a Covered

Countermeasure[.]"  *Id.*  If plaintiff alleges the administration of a covered countermeasure at all,

he alleges no direct causal connection between (1) decedent's injuries and (2) defendants'

decisions to administer to another person the covered countermeasures that defendants claim the

Petition refers to—PPE, diagnostic tests, an infection control plan, or actions under Kan. Admin.

Regs. § 26-41-207.  *See* Doc. 36 at 22–23.

In sum, plaintiff's allegations of inaction assert none of the qualifying inactions described

by the Declaration.  *See* 85 Fed. Reg. at 79,197.  Plaintiff does not allege inaction—non-

---

[7]  *See, e.g.*, Doc. 36 at 26 ("Defendants' decisions regarding allocation, use, and administration of
PPE qualifies as 'administering a covered countermeasure' and triggers PREP Act immunity, as well as
federal jurisdiction in this Court."); Doc. 36 at 28 ("PREP Act immunity in this case applies to cover
decisions regarding the allocation and use of . . . covered countermeasures, such as PPE and testing.").

administration or non-use—*caused by* or *in order to* administer covered countermeasures

elsewhere.  So, while Secretary Azar reads the PREP Act's immunity to cover a species of

"inaction" claims, that species hasn't presented itself in this case.

The Petition offers "no clear allegation that any injury or claim of loss was caused by the

administration or use of any covered countermeasure, let alone that the loss arose out of, related

to, or resulted from the same."  *Eaton*, 2020 WL 4815085, at *7.  Perhaps a state law action

coming within the scope of the PREP Act's remedies "would be removable to federal district

court, even if an otherwise adequate state cause of action were pleaded without reference to

federal law[,]" but it "does not follow" that any of plaintiff's claims here fall within the scope of

one of the PREP Act's causes of action.  *Franchise Tax Bd.*, 463 U.S. at 24–25.  And none do.

In sum, Congress has not completely preempted any of this plaintiff's state law claims.

With that exception to the "well-pleaded complaint" rule not applying, the court cannot conclude

that plaintiff brings a "civil action[ ] arising under the Constitution, laws, or treaties of the United

States."  28 U.S.C. § 1331.[8]  Thus, § 1331 cannot serve as the statutory basis for the court to

---

[8]        To the extent that defendants assert that plaintiff's state law claims arise under federal law given a
purported embedded federal question, *see, e.g.*, Doc. 41-1 at 8 (Sur-Reply); Doc. 58 at 1 (citing *Grable &
Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)), the court rejects the argument as
well.

           For reasons explained in the court's analysis of the complete preemption doctrine, the court
rejects defendants' assertion that "[b]y their nature, [plaintiff's] allegations invoke a substantial federal
question as to whether the broad immunities afforded under the PREP Act apply to the conduct of
[d]efendants[.]"  Doc. 41-1 at 8.  Plaintiff's claims here do not necessarily raise a federal issue.  *See
Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947–48 (10th Cir. 2014)
(discussing the "narrow boundaries of the substantial question category" of statutory "arising under"
jurisdiction and holding that plaintiff's "federal issues are merely federal defenses, which" fail to provide
"a sufficient basis from which to conclude that the questions are 'necessarily raised[ ]'" under *Gunn v.
Minton*, 568 U.S. 251, 258 (2013) and "do not give rise to federal question jurisdiction under 28 U.S.C. §
1331"); *see also Martin*, 2020 WL 5422949, at *3 (rejecting defendants' embedded federal question
theory where defendants based that assertion on "basically the same reasons that [defendants'] think there
is complete preemption" via the PREP Act because "the raised federal issue is [d]efendants' *defense*, not
the actual claims made by [p]laintiffs" (emphasis added)).

exercise "original jurisdiction" over the action.  Unless Congress has provided the court with another source of "original jurisdiction" over this action, removal under 28 U.S.C. § 1441(a) is improper.  Defendants identify no alternative source.  Nor do they identify another basis for proper removal to federal court.

### 7.   Defendants' Counterclaim for Declaratory Relief (Doc. 35)

The court also remands defendants' Counterclaim for a declaratory judgment (Doc. 35).  The parties' briefs on this Counterclaim issue explore some interesting terrain, but the court concludes that other sources of law better answer the question.  The Counterclaim may not remain in this court.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c); *see also Lazorko v. Pa. Hosp.*, 237 F.3d 242, 250 (3d Cir. 2000), *cert. denied*, 533 U.S. 930 (2001) ("When the underlying federal subject matter jurisdiction upon which to remove a case from state court does not exist, the entire case must be remanded." (citing 28 U.S.C. § 1447(c))); *RMP Consulting Grp., Inc. v. Datronic Rental Corp.*, No. 98-5062, 189 F.3d 478, 1999 WL 617690, at *3–4 (10th Cir. Aug. 16, 1999) (discussing § 1447(c)).

But "the procedural posture of this case requires [the court] to specify the nature of 'the case' to be remanded."  *RMP*, 1999 WL 617690, at *3.  The court must sort out whether "the case" includes defendants' Counterclaim.  Our Circuit has held that a defendant's counterclaim "properly forms part of the case" for purposes of § 1447(c) "and should be remanded as such" where "it appears from the record that the counterclaim was filed as of right, without any order by the district court approving it."  *Id.*  In contrast, pleadings filed by leave granted by a federal court Order that the court entered without subject matter jurisdiction do not "'form part of the

case to be remanded.'"  *See Calton v. JVM Sovereign Apartments, LLC*, No. 17-2739-DDC-JPO, 2018 WL 3708167, at *3–4 (D. Kan. Aug. 3, 2018) (quoting *RMP*, 1999 WL 617690, at *4).

Here, it appears from the record that defendants' Counterclaim was filed as of right, without any Order approving it.  The Counterclaim thus properly forms part of "the case" under § 1447(c).  *See Calton*, 2018 WL 3708167, at *2–3 (applying *RMP* and holding that defendant's original Third-Party Complaint filed as a matter of right was part of the case to remand to state court, but that defendant's Amended Third-Party Complaint filed by leave of court was not part of the case remanded to state court).  The court thus remands the Counterclaim to state court as well.

But even if defendant's Counterclaim did not fall within "the case" for purposes of § 1447(c)—and to the extent defendants assert that their Counterclaim rightly belongs in federal court—the Counterclaim would suffer subject matter jurisdiction deficiency.

In their filings about whether the Counterclaim should remain in this court, both parties apply Justice Byron White's Tenth Circuit opinion in *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (White, J., sitting by designation).  *See* Doc. 43 at 2; Doc. 53 at 3.  But *Mhoon* doesn't apply here.  *Mhoon* considered whether the district court abused its statutory "discretion to refuse to hear an otherwise justiciable declaratory action" by failing to "employ[ ] that discretion to dismiss this matter" given the nature and setting of defendant's claim for declaratory relief.  *Mhoon*, 31 F.3d at 982.  *Mhoon* emphasized that appellant did "not suggest that the trial court lacked subject matter jurisdiction over this . . . action[,]" and noted that "the district court is not obliged to entertain every *justiciable* declaratory claim brought before it."  *Id.* (emphasis added).

Here, the declaratory action remains far from obviously "otherwise justiciable." So, before potentially applying *Mhoon* to determine whether the court *should* exercise jurisdiction over defendants' Counterclaim for declaratory relief, the court must determine whether it *could* exercise jurisdiction. To do so, the court looks to precedent and recalls the now familiar rules governing statutory "arising under" jurisdiction that Congress granted in 28 U.S.C. § 1331.

"The Declaratory Judgment Act provides that '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party.' The Act does not in itself confer jurisdiction upon federal courts." *Woods v. City & Cnty. of Denver*, 62 F. App'x 286, 289 (10th Cir. 2003) (first quoting 28 U.S.C. § 2201(a); then citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). So the court must determine whether it has "an independent basis for jurisdiction which would then empower it to enter a declaratory judgment." *Id.* "'[I]n the absence of any pleading that invokes diversity jurisdiction, the relevant basis is federal question jurisdiction under 28 U.S.C. § 1331.'" *Id.* (quoting *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996)). Indeed, defendants assert that "jurisdiction exists over this Counterclaim pursuant to 28 U.S. Code § 1331[.]" Doc. 35 at 2; *see also* Doc. 52 at 9–10 (asserting that "even if [p]laintiff's claims had not been removed to federal court, it would have been appropriate for [d]efendants to file a separate declaratory judgment action in federal court on the issue of [d]efendants' federal immunity rights under the PREP Act").

But the court concludes that precedent both from our Circuit and the Supreme Court advise otherwise. "*Skelly Oil* has come to stand for the proposition that if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state

created action, jurisdiction is lacking."  *Franchise Tax Bd.*, 463 U.S. at 16 (citation and internal

quotation marks omitted); *see also Cardtoons, L.C.*, 95 F.3d at 965 ("It is well settled that we

look to the nature of the anticipated claims of the declaratory judgment defendant, not the

anticipated defenses by the declaratory judgment plaintiff, to determine the presence of a federal

question.").

That circumstance presents itself here:  but for the availability of the declaratory

judgment procedure under which defendants bring their Counterclaim, the federal claim arises

only as a *defense* to plaintiff's state created action.  As discussed above, plaintiff's well-pleaded

Complaint does not raise the PREP Act issue that defendants' declaratory judgment

Counterclaim raises (or, for that matter, any other federal issue).  Without the declaratory

judgment mechanism, the federal PREP Act issue could arise only as a defense to plaintiff's

claims under Kansas state law.  The court thus lacks jurisdiction over the Counterclaim.  *See*

*Cardtoons, L.C.*, 95 F.3d at 965 (holding that the court "cannot ground [its] jurisdiction on" the

First Amendment where "the First Amendment arises only as a potential *defense* to [plaintiff's]

claimed right:  [plaintiff] could neither bring an action based on the First Amendment nor assert

a well-pleaded state claim that necessarily involved a First Amendment question" (citation and

internal quotation marks omitted)).

The court concludes that defendants' Counterclaim does not fall within § 1331—the

court's statutory grant of "arising under" subject matter jurisdiction.  Even if not part of the case

that the court remands under § 1447(c), the court cannot exercise jurisdiction over the

Counterclaim.

V.      **Conclusion**

In enacting the PREP Act, Congress created federal remedial rights.  But plaintiff's claims do not fall within the scope of those remedies.  So, this case is not an action where one of plaintiff's claims, "even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8.  The doctrine of "complete preemption" does not apply.  Plaintiff's claims thus do not arise under federal law.  And since no other basis for subject matter jurisdiction presents itself, the court must remand the case to state court.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Remand to State Court (Doc. 15) is granted.  The court remands this case to the District Court of Johnson County, Kansas.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion for Leave to File Surreply (Doc. 41) is granted.  The court directs the Clerk to docket Doc. 41-1 as defendants' Sur-reply.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Request for a Jurisdictional Hearing (Doc. 36) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion to Dismiss for Failure to State a Claim (Doc. 8) is dismissed because the court lacks subject matter jurisdiction to decide the motion.  This ruling does not affect defendants' rights, whatever they are, to present a similar motion to the state court.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Counterclaim for declaratory relief (Doc. 35) is remanded because the court lacks subject matter jurisdiction.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion to Dismiss Counterclaim for Declaratory Judgment (Doc. 42) is dismissed because the court lacks subject

matter jurisdiction to decide the motion.  This ruling does not affect plaintiff's rights, whatever they are, to present a similar motion to the state court.

**IT IS SO ORDERED.**

**Dated this 29th day of January, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**